## CAUGHEY v. AMES.

1. INTOXICATING LIQUORS—TRANSFER OF LICENSE—APPROVAL—SPECIFIC PERFORMANCE.

An agreement to transfer a license to sell beer, wine and spirits for consumption on the premises, subject to approval by the constituted authorities is not against public policy and may be specifically enforced (Act No. 8, §§ 2, 17, 24, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 281, Pub. Acts 1937).

2. FRAUDS, STATUTE OF—SUFFICIENCY OF WRITING—OPTIONS.

Option given by defendants to plaintiff to purchase designated real and personal property, which named the parties, the property, the price, and the times and terms of payment, was a sufficient writing to satisfy the statute of frauds as it left no essential element to be supplied by parol (3 Comp. Laws 1929, § 13411).

3. VENDOR AND PURCHASER—OPTIONS—REASONABLE TIME—TRANSFER OF LIQUOR LICENSES.

In determining what is a "reasonable time" within which to exercise an option to purchase real and personal property and which involved return of the down payment in case transfer of license to sell beer, wine and spirits for consumption on the premises were not approved, the renewal of the license was an important consideration (Act No. 8, §§ 2, 17, 24, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 281, Pub. Acts 1937).

4. SAME—OPTIONS—REASONABLE TIME—RENEWAL OF LIQUOR LICENSE.

Attempt to exercise right to purchase, on April 30th or within three days thereafter, under an option dated March 21st, was within the reasonable time, contemplated by option, where defendant optionors received renewal license to sell beer, wine and spirits for consumption on the premises on April 28th or 29th, and it is obvious that the deal was off if the license were not renewed (Act No. 8, §§ 2, 17, 24, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 281, Pub. Acts 1937).

---

Offer, reasonable time in which to accept, see 1 Restatement, Contracts, 40(1), (3).

5. SAME—OPTION—TRANSFER OF LIQUOR LICENSE—OFFER TO PERFORM.

In action to recover damages for failure to perform option involving transfer of a license to sell beer, wine and spirits for consumption on the premises, where optionors claimed to have offered to pay the costs thereof, issue as to whether or not optionee offered to perform was properly left to jury (Act No. 8, §§ 2, 17, 24, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 281, Pub. Acts 1937).

6. SAME—OPTIONS—ASSIGNMENTS.

Optionors' claim that optionee, who was in the real estate business and dealt in taverns, sought to modify written option to purchase real and personal property and to transfer a liquor license by substituting a third party as purchaser or that optionee did not offer to perform within a reasonable time *held*, without merit in action for damages for failure to perform, where optionors admit they made no objection to performance on the ground that the option was being exercised in another's name and option, prepared at optionors' request, did not prevent its assignment to a third party.

7. APPEAL AND ERROR—QUESTIONS REVIEWABLE—INSTRUCTIONS—REQUESTS TO CHARGE—NEW TRIAL.

Alleged errors in charge to jury are not considered where record does not indicate requests to charge were made, no complaint was made to the trial court regarding charge as given and no motion for new trial was made.

8. TENDER—REFUSAL TO ACCEPT.

A formal tender is not necessary where a party has shown by act or word that it would not be accepted, if made, as the law does not require a useless formality.

9. DAMAGES—OPTIONS—REFUSAL TO COMPLETE DEAL.

Verdict of $729 was within the range of, and supported by, the testimony in action for damages for optionor's refusal to complete the deal where $1,000 profit was shown to have been lost to optionee through such refusal.

Appeal from Ottawa, Miles (Fred T.), J. Submitted August 5, 1946. (Docket No. 66, Calendar No. 43,489.) Decided October 7, 1946.

Assumpsit by Robert J. Caughey against Walter C. Ames and others for damages flowing from

breach of contract. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Alexis J. Rogoski,* for plaintiff.

*Charles E. Misner,* for defendant.

BOYLES, J. Plaintiff brought this suit against these defendants in the circuit court for Ottawa county claiming damages for alleged breach of a written signed option giving plaintiff the right to purchase certain property, real and personal, on contract, including the transfer of a liquor license. The defendants, among other things, pleaded affirmatively that the alleged option agreement was void under the statute of frauds.* The case was tried before a jury, the defendants' motion for a directed verdict at the conclusion of the plaintiff's proofs was denied, the court reserved decision on defendant's motion for a directed verdict at the close of all the proofs, and the jury returned a verdict for $729 in favor of the plaintiff. The defendants thereupon moved for judgment notwithstanding the verdict which was likewise denied by the court. Judgment was entered on the verdict and defendants appeal.

The option agreement on which plaintiff relies is as follows:

"Exhibit A.
"Spring Lake, Michigan,
"March 21, 1945.
"Received from Robert J. Caughey of Muskegon the sum of $100 to apply on the purchase price of the property known as the Home Cafe located on Savidge street, Spring Lake, Michigan. Considera-

---

* See 3 Comp. Laws 1929, § 13411 (Stat. Ann. § 26.906).—RE-PORTER.

tion $14,000. Said consideration to include all the real and personal property, also class C license.*

"To be sold on contract with a down payment of $5,000. Balance to be paid at the rate of $100 or more monthly. Interest at the rate of 5 per cent. per annum to be deducted from the monthly payments and the balance to be applied on the principal.

"If license is not approved by the authorities, the $100 is to be returned to the said Robert J. Caughey.

                    "WALTER C. AMES,
                    "PAULINE AMES,
                    "DOROTHY SCHLEDEWITZ."

Three days later, on March 24, 1945, plaintiff entered into a written agreement with one Arthur Werner for Werner to purchase the aforesaid property from him for $15,000, of which $6,000 was to be paid at the time of the transfer of the license, and $500 was paid "as earnest money" to be returned if the liquor license was not "transferred" by the local or State authorities.

On April 20, 1945, defendant Walter C. Ames made application for a 1945 liquor license (his 1944 license would expire May 1, 1945). He received his new license April 28 or 29, 1945. On or about April 30th he sent the $100 back to plaintiff and refused to complete the deal, although the liquor license had, at that time, been "approved by the authorities." Incidentally, an agreement to "transfer" a liquor license, subject to approval by the constituted authorities,† is not against public policy and may be specifically enforced. *Roodvoets* v. *Anscer,* 308 Mich. 360.

---

* A class "C" license permits sale of beer, wine and spirits for consumption on the premises. See Act No. 8, §§ 2, 24, Pub. Acts 1933 (Ex. Sess.), as amended by Act No. 281, Pub. Acts 1937 (Comp. Laws Supp. 1940, §§ 9209-17, 9209-39, Stat. Ann. 1944 Cum. Supp. §§ 18.972, 18.995).—REPORTER.

† See Act No. 8, § 17, Pub. Acts 1933 (Ex. Sess.), as amended by Act No. 281, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 9209-32, Stat. Ann. 1945 Cum. Supp. § 18.988).—REPORTER.

For reversal, defendants claim that the court should have directed a verdict for defendants on the ground that the memorandum, exhibit A, is not a sufficiently complete agreement to support a judgment for plaintiff based on it as a contract or as a memorandum in writing sufficient to satisfy the statute of frauds.

In effect, exhibit A is an option given by the defendants to plaintiff to purchase designated property, real and personal. It names the parties, the property, the price, the times and terms of payment. It leaves no essential element to be supplied by parol. It is sufficient, as against the objections raised here. See *Benedek* v. *Mechanical Products, Inc.,* 314 Mich. 494, and *Cramer* v. *Ballard, ante,* 496, and cases discussed therein.

The defendants also claim that the plaintiff never offered to perform the agreement *within a reasonable time.* As to the question of what was a "reasonable time" within which plaintiff might exercise the right of purchase under the option, it is important to note that the option included a liquor license, and provided that the down payment of $100 should be returned if the license should not be approved "by the authorities." Obviously this meant that the deal was off if the license was not "renewed" (*i.e.*—if a new license for 1945 was not granted by the liquor commission). It is equally obvious that plaintiff and the defendants intended that the plaintiff might delay exercising his right of purchase under the option until it had been ascertained that a sale of the property in question—a tavern—might include the transfer of a new or so-called "renewal" liquor license, "approved by the authorities." Plaintiff's attempt to exercise the right to purchase, on April 30th or within three days thereafter, was within the reasonable time contemplated by the option.

The defendants admit that on April 30th or about May 2d or 3d, they refused to perform the contract. The conclusion is inescapable that the plaintiff made an offer to perform which the defendants refused. Defendant Walter C. Ames, who acted throughout the entire matter on behalf of the other defendants, his wife and daughter, admitted when called as a witness that the plaintiff requested the defendants to perform their option agreement by making a contract of sale with Werner instead of with the plaintiff and that defendants made no objection on that ground. Defendants' refusal to perform was placed on the ground that they had to pay for a new 1945 liquor license. Plaintiff claimed that he offered to pay the costs of the new license. This was denied by the defendants. The court properly submitted this question of fact, which involved the issue as to whether the plaintiff had offered to perform, to the jury.

The defendants made no objection to accepting Werner as the party with whom the contract was to be made. At the outset of the entire transaction the defendants were informed that the plaintiff was in the real estate business and that he dealt in taverns. Plaintiff told the defendant Walter C. Ames that he intended to acquire the property to resell it, and would like either a listing or an option. The option was prepared at defendants' request. If the defendant Walter C. Ames had objected to the option being exercised by taking the contract in Werner's name, plaintiff could then have taken the contract in his own name. There was nothing in the option agreement which would then prevent him from assigning to Werner. Under these circumstances we see no merit in defendants' claim that the plaintiff now seeks to modify the option by an oral agreement, or that the plaintiff did not offer to perform within a reasonable time.

Defendants also claim there were errors in the charge to the jury. On the record before us, no requests to charge were made, and no complaint made in the trial court regarding the charge as given. No motion for new trial was made. Appellants now urge that the court erred in instructing the jury that if the plaintiff did offer to pay the defendants for the 1945 liquor license plaintiff was entitled to recover; but that plaintiff could not recover damages if no such offer was made. Whether the plaintiff had offered to reimburse defendants for the expense of the 1945 liquor license was a disputed question of fact. The charge to the jury on that issue was at least as favorable to the defendants as they had a right to expect. Defendant Walter C. Ames admitted before the jury that a day or two after he had obtained the new license he refused to transfer the liquor license to plaintiff, and that two or three days later he informed the plaintiff that he had changed his mind "and wasn't going ahead with the deal." After such refusal there was no necessity for plaintiff to go through with the useless formality of making any formal tender or further attempt to obtain performance of the option by the defendants. Defendants' refusal to perform excused further tenders or offer to perform by the plaintiff.

"The trial court found that tender, if made, would have been refused, and there is ample evidence to support this finding. This being so, tender was excused, and the payment of interest thereafter, suspended.

" 'The law does not require a useless formality. A formal tender is not necessary where a party has shown by act or word that it would not be accepted, if made.' " *Weinburgh* v. *Saier,* 303 Mich. 640, 645.

See, also, *Witt* v. *Dersham,* 146 Mich. 68, 71; 1 Restatement, Contracts, § 306.

The appellants' other complaint of error—that the damages were purely speculative—is equally without merit. The verdict was within the range of and supported by the testimony, and less than the $1,000 profit shown to have been lost by plaintiff through defendants' refusal to complete the deal.

Affirmed. Costs to appellee.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, REID, NORTH, and DETHMERS, JJ., concurred.